Eastern District of Kentucky
F I L E D
JUN 0 5 2013
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 13-14-KSF

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                          **OPINION & ORDER**

SUSAN VENTURA and
MIGUEL VENTURA                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion of the defendants, Susan Ventura and Miguel Ventura, pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure and the Supreme Court's decision in *Blackledge v. Perry*, 417 U.S. 21 (1974), for an order dismissing the indictment in this case. This motion is fully briefed and is ripe for review.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The defendants, Susan and Miguel Ventura (the "Venturas"), own and operate Miguel's Pizza and Rock Climbing Shop ("Miguel's") in Slade, Kentucky. Miguel's provides campground services and sells pizza and rock climbing equipment and apparel. In 2010, law enforcement initiated an investigation into the Venturas' banking activity based on information suggesting possible structuring activity into a business account maintained by the Venturas at Central Bank and Trust Company ("Central Bank").

On April 11, 2011, United States Magistrate Judge Wier authorized the seizure of up to $148,070.57 from Miguel's account at Central Bank in Winchester, Kentucky. Upon execution of the warrant, $41,185.42 was seized. On the same day, agents from the Internal Revenue Service

went to the Venturas' business and home. The Venturas consented to a search of their home, which revealed a plastic bucket containing $259,714.00 in cash. After consulting with an attorney, they consented to seizure of the cash.

On January 17, 2013, a federal grand jury returned a one count indictment against Susan Ventura, charging her as follows:

> On or about March 13, 2009, continuing through September 22, 2010, in Clark County, in the Eastern District of Kentucky, **SUSAN VENTURA** did knowingly and for the purposes of evading the reporting requirements of 31 U.S.C. § 5313(a) and the regulations promulgated thereunder, structure and assist in structuring currency transactions, specifically currency deposits totaling $350,385.57 into Central Bank and Trust Company, a domestic financial institution, account ****7536, all in violation of 31 U.S.C. § 5324(a)(3).

The indictment also contained a forfeiture allegation, seeking forfeiture of "all property, real or personal, involved in the offense and any property traceable to such property." Specifically, "the property to be forfeited includes, but is not limited to, the following:

**FUNDS SEIZED FROM CENTRAL BANK & TRUST**:
$41,185.42 seized from account number 62110068

**MONEY JUDGMENT**:
$309,200.15 representing amount structured minus funds seized from Central Bank.

The indictment further provides that if the property described, due to any act or omission by Ventura:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

"the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 31 U.S.C. § 5317(c) and by 28 U.S.C. § 2461(c)." [DE #1].

On March 12, 2013, Susan Ventura filed a motion to dismiss the indictment and a motion in limine concerning the funds seized from her residence [DE #13]. On April 11, 2013, the Court denied Susan Ventura's motion to dismiss, but granted her motion in limine to prohibit the United States from making any reference to the $259,714 seized funds during the trial of this action. The Court further ordered that the United States make an application pursuant to 21 U.S.C. § 853(e)(1) for restraint of the funds no later than April 17, 2013 [DE #15].[1]

Also on April 11, 2013, a federal grand jury returned a Superseding Indictment in this matter, charging both Susan Ventura and Miguel Ventura with one count of conspiracy to violate 31 U.S.C. §§ 5324(a)(3) and § 5313 and the regulations promulgated thereunder, forty-eight counts of currency structuring in violation of 31 U.S.C. § 5324(a)(3), and five counts of causing or attempting to cause a domestic financial institution to fail to file a Currency Transaction Report ("CTR") as required by 31 U.S.C. § 5313, in violation of 31 U.S.C. § 5324(a)(1). The Superseding Indictment also includes a forfeiture allegation seeking "all property, real or personal, involved in the offense and any property traceable to such property." Specifically, "the property to be forfeited includes, but is not limited to, the following:

**Currency:**

(a) $41,185.42 seized from Account No. ***7536 at Central Bank and Trust Company.

(b) $259,714.00 in U.S. currency recovered on or about April 12, 2011 from the Defendants' residence, located at 1890 Natural Bridge Road, Slade, Kentucky 40376.

---

[1] No such motion has been filed. The United States, however, has stated that it believes that the Superseding Indictment alleging that the seized funds be criminally forfeited is sufficient to effectuate an application for restraint of the funds [DE #28]. The Venturas have stated that they intend to file a motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for return of the seized funds.

3

**Money Judgment:**

(c)     $443,328.78 representing the total amount structured between March 13, 2009 and September 22, 2010 minus the funds already seized from Account No. ***7536 at Central Bank and Trust Company, all defendants being jointly and severally liable.

**Real Property:**

(d)     All the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located in Lee County, Kentucky, more particularly described as follows: . . . .

[DE #16] The Venturas entered pleas of not guilty to these charges and this matter is currently set for trial on July 1, 2013.

## II.     THE VENTURAS' MOTION TO DISMISS

On April 30, 2013, the Venturas filed their joint motion to dismiss the indictment [DE #35]. According to the Venturas, Counts 2 through 49 of the Superseding Indictment are multiplicitous and should be dismissed. They also argue that Counts 50 through 54 fail to state an offense under 18 U.S.C. § 5324(a)(1) and should be dismissed. Finally, the Venturas argue that the entire Superseding Indictment should be dismissed for vindictive prosecution. Each argument is addressed separately below.

### A.     COUNTS 2 THROUGH 49 ARE NOT MULTIPLICITOUS

Counts 2 through 49 of the Superseding Indictment charge the Venturas with knowingly and purposefully evading the reporting requirements of 31 U.S.C. § 5313, and the regulations promulgated thereunder, by structuring currency transactions with domestic financial institutions in violation of 31 U.S.C. § 5324(a)(3). The Venturas argue that the Superseding Indictment violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because it charges a single offense in more than one count.

4

"Generally, an indictment may not charge a single criminal offense in several counts without offending the rule against 'multiplicity' and implicating the double jeopardy clause." *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002)(citation and internal quotations marks omitted). An indictment is multiplicitous when "it charges in separate counts two or more crimes, when in law and fact, only one crime has been committed." *United States v. Holmes*, 44 F.3d 1150, 1153-54 (2nd Cir. 1995). To determine whether multiplicity exists, the Court must determine what constitutes the correct unit of prosecution for a particular offense. *Bell v. United* States, 349 U.S. 81, 82-83 (1955); *United States v. Richards*, 659 F.3d 527, 547 (6th Cir. 2011).

In a structuring case, courts look to the source of the funds that were allegedly structured in order to determine the appropriate unit of prosecution. *See e.g. United States v. Handakas*, 286 F.3d 92, 98 (2nd Cir. 2002)(overruled in part on other grounds by *United States v. Rybicki*, 354 F.3d 124 (2nd Cir. 2003). Generally, if all the structured funds derive from the same source, then only one instance of structuring occurred regardless of how many transactions were conducted to accomplish the violation. *See Handakas*, 286 F.3d at 99. On the other hand, where the funds derive from multiple or distinct sources, separate structuring counts based on individual transactions are permissible. *See United States v. Kushner*, 256 F.Supp.2d 109, 114 (D.Mass. 2003); *United States v. Presgraves*, 2011 WL 4716222 (N.D. W. Va. Oct. 5, 2011).

Here, the Government contends that its decision to charge multiple counts of structuring in the Superseding Indictment was based on the Venturas' statements to law enforcement authorities that the structured funds were receipts earned by their business over a period of time and that all cash generated by the business is deposited in the same calendar year in which it is earned. The Venturas have not come forward with any evidence that the alleged structured funds derived from a single

5

source. Moreover, the cases relied upon by the Venturas in support of their motion are factually distinguishable. In *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991), *United States v. Nall*, 949 F.2d 301 (10th Cir. 1991), and *United States v. Kushner*, 256 F.Supp.2d 109, the courts were faced with structuring of currency derived from the same cash hoard divided into multiple transactions. Unlike those cases, the Government in this case is charging that as the Venturas acquired new sources over time from the gross receipts of their business, they separately structured these funds, thereby committing a separate crime. Accordingly, because the Superseding Indictment does not involve the structuring of a single cash hoard, Counts 2 through 49 are not multiplicitous and the Venturas' motion to dismiss on this ground will be denied.

## B. COUNTS 50 THROUGH 54 DO NOT FAIL TO STATE A CLAIM

Counts 50 through 54 of the Superseding Indictment charge the Venturas with individual counts of violating 18 U.S.C. § 5324(a)(1). This statute makes it a crime to cause or attempt to cause a domestic financial institution to fail to file a CTR as required under section 5313(a) or any regulation prescribed thereunder. The reporting regulation at issue in this case is 31 C.F.R. § 103.22. Subsection (b) of this regulation states that "[e]ach financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000, except as otherwise provided in this section. Subsection (c)(2) further provides:

> In the case of financial institutions other than casinos, for purposes of this section, multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day (or in the case of the Postal Service, any one day). Deposits made at night or over the weekend or holiday shall be treated as if received on the next business day following the deposit.

6

The Venturas move to dismiss Counts 50 through 54. In Count 50, the United States charges that on April 20, 2010, a deposit of $10,020.00 was made at People's Exchange. In Count 51, the United States charges that on May 5, 2010, a deposit of $18,000.00 was made at Central Bank. Count 52 charges that on May 19, 2010 two separate deposits in the amounts of $10,000.00 and $4,000.00 were made into separate accounts at People's Exchange. Count 53 charges that on June 14, 2010, two separate deposits in the amounts of $10,000.00 and $60.00 were made into the same account at Central Bank. Finally, Count 54 charges that on September 13, 2010, a deposit was made at Central Bank for $10,010.00.

With respect to Counts 50, 51, and 54, each involving a single deposit of more than $10,000.00, the Venturas contend that it was the financial institution, not the Venturas, that had the duty to report these transactions. According to the Venturas, the failure of the financial institution to file the appropriate CTR cannot result in charges against the person depositing the money. The Venturas fail, however, to cite any caselaw in support of this argument.

Section 5324(a)(1) makes it a crime to cause or attempt to cause a financial institution to fail to file a report. In the transactions charged in Count 50, 51 and 54, the United States alleges that the Venturas intended to deposit $10,000 or less to avoid the reporting requirement, but due to a mistake, actually deposited an amount in excess of $10,000.00, and thereby, obligated the bank to file a CTR. This allegation is sufficient to state a claim for a violation of section 5324(a)(1).

Count 52 charges that the Venturas attempted to defeat the bank's duty to file a CTR by making deposits totaling $14,000.00 into separate accounts at the same bank on the same day. Apparently, the Venturas are arguing that because the money was spread over two accounts at the same financial institution, the reporting requirement was not triggered. There is simply no authority

7

for the Venturas' position. Section 5324(a)(1) clearly provides that financial institutions are required to treat multiple transactions on the same business day as a single transaction. 31 C.F.R. § 103.22(c)(2). The fact that the funds were spread over two separate accounts does not obviate the financial institution's reporting requirement. Thus, Count 52 does not fail to state a claim.

Finally, the United States has noted that it will move to dismiss Count 53 on the grounds that it actually represents a violation of section 5324(a)(3) based on recently obtained information. The United States indicates that it will seek to reclassify it as a separate violation of section 5324(a)(3). In light of the United States' acknowledgment that Count 53 fails to state a claim as charged, this count will dismissed.

### C. THE UNITED STATES HAS NOT SHOWN ANY VINDICTIVE MOTIVE

Finally, the Venturas seek dismissal of the Superseding Indictment for prosecutorial misconduct based on *Blackledge v. Perry*, 417 U.S. 21 (1974). In *Blackledge*, the Supreme Court held that a person convicted of an offense is entitled to pursue his procedural rights without apprehension that the state will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. *Id.* at 28.

In support of their motion, the Venturas first turn to the procedural history of the case. After the Grand Jury returned the one-count indictment against Susan Ventura, she filed a motion to dismiss the portion of the indictment which referred to the seized funds and a motion in limine to exclude any reference to the seized funds [DE # 13]. The Venturas contend that because Susan Ventura filed this motion, the United States vindictively obtained the Superseding Indictment. Second, the Venturas argue that this prosecution, and others in this district, are "nothing more than

a thinly veiled campaign by the government to abuse the intent of the structuring statutes in order to fill the coffers of the United States Treasury." [DE #39, p. 2]

In the pretrial setting, the Government has "broad discretion" as to who to prosecute and what charges to bring. *Wayte v. United States*, 470 U.S. 598, 607 (1985). Moreover, there is no presumption of vindictiveness from the mere fact that new or more serious charges are brought against a defendant. *See United States v. Goodwin*, 457 U.S. 368, 384 (1982); *Bordenkircher v. Hays*, 434 U.S. 357, 364 (1978). "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364. In the Sixth Circuit, courts have divided vindictive prosecution claims into two categories: "actual vindictiveness" and a "realistic likelihood of vindictiveness." *See United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005). Actual vindictiveness requires "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Id.* at 774. Here, the Venturas have not come forward with any evidence, direct or circumstantial, to show improper animus by the prosecution.

To succeed on the "realistic likelihood of vindictiveness" theory, the Venturas must demonstrate: "(1) [the] exercise of a protected right; (2) a prosecutorial stake in the exercise of the right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for exercise of the protected right." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). Neither Susan nor Miguel Ventura can satisfy this standard.

While its true that Susan Ventura did exercise a protected right when she filed her motion to dismiss and motion in limine on March 12, 2013, Miguel Ventura was not before the Court until

9

April 30, 2013 - the day he was arraigned and this motion was filed. So while Susan Ventura has satisfied the first element of the analysis, Miguel Ventura's vindictive prosecution claim could be denied on this basis.

Turning to the second element of the analysis, the Court must determine whether the Venturas have demonstrated that the prosecutor had a "stake" in preventing the exercise of a protected right. The prosecutor's stake varies depending on the stage in litigation during which the protected right is asserted. *See Poole*, 407 F.3d at 776. For instance, the prosecution's "stake" is generally greater after trial when faced with an appeal, which could potentially force it to "endure a complete new trial, or 'do over what it thought it had already done correctly." *Id.* at 776 (quoting *Goodwin*, 457 U.S. at 383). The prosecutor's stake in understandably lesser in the pretrial context, where a prosecutor can expect a defendant to invoke certain procedural rights which "inevitably impose some burden on the prosecutor." *Goodwin*, 457 U.S. at 381. While Susan Ventura did exercise her procedural rights by filing the motion, this commonplace motion did not impose enough of a burden to constitute a "realistic likelihood of vindictiveness." *Id.* at 381. In fact, other than the evidentiary ruling regarding reference to the seized funds, the Court's decision was not adverse to the United States.

The Venturas, however, point to other structuring cases in this district as evidence that "these prosecutions are nothing more than a thinly veiled campaign by the government to abuse the intent of the structuring statutes in order to fill the coffers of the United States Treasury" [DE #39, p. 1-2]. According to the Venturas, the forfeitures at issue in these cases create a financial stake for the Government and local police departments, resulting in a windfall. While the Government may have a financial stake in the outcome of this case, the Venturas have pointed to no caselaw which

indicates that the fact that the Government may recover additional monies alone amounts to a sufficient "stake" to constitute a "reasonable likelihood of vindictiveness."

The third element of the analysis requires the Court to consider the reasonableness of the Government's action in filing the Superseding Indictment. *Suarez*, 263 F.3d at 479. The filing of a superseding indictment, alone, is not presumptively unreasonable. *Id.* In order to be considered vindictive, the superseding indictment must generally add additional or more severe charges based on the same conduct charged in the original indictment. *Id.*; *see also United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980). In this case, the Superseding Indictment arose out of new evidence which was provided to the Government on March 6, 2013. This discovery included information suggesting the commission of additional criminal acts using bank accounts not previously focused on by the Government. Once the Government obtained bank records from People's Exchange, Whitaker Bank, and BB & T, and conducted a follow-up investigation, it determined that the Venturas had committed additional, not yet charged, criminal violations. Based on this new information and subsequent investigation, it is reasonable for the Government to bring the additional charges. Thus, the Venturas have failed to satisfy the first three elements of the "realistic likelihood of vindictiveness" analysis.

Without a positive finding on the first three elements of the analysis, the Venturas are not entitled to any presumption regarding the fourth element, which requires a finding of prosecutorial intent to punish a defendant for exercising a protected right. *Andrews*, 633 F.2d at 479. Moreover, the Venturas have come forward with no evidence of any specific intent to punish or improper animus by the Government. As a result, the Venturas have failed to establish a "realistic likelihood of vindictiveness," and therefore, their motion to dismiss for vindictive prosecution will be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the Venturas' motion to dismiss [DE #37] is hereby **GRANTED** to the extent that Count 53 is hereby **DISMISSED**, and **DENIED** in all other respects.

This 5th day of June, 2013.

*Signed:* Joseph M. Hood
Karl S. Forester, Senior Judge